(No. M.R. 4172.—

*In re* W. JASON MITAN, Petitioner.

*Opinion filed December 30, 1987.*

232

SIMON, J., took no part.

Royal B. Martin, Jr., of Silets & Martin, and John A. Holtaway, all of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

John Powers Crowley, of Cotsirilos & Crowley, of Chicago, for Daniel M. Pierce, Jeffrey P. DeJong and Jerold S. Solovy.

Edward T. Joyce, of Joyce & Kubasiak, of Chicago, for M. Cherif Bassiouni.

CHIEF JUSTICE CLARK delivered the opinion of the court:

This matter is before us on various motions arising out of a verified petition filed by disbarred attorney W. Jason Mitan for his reinstatement to the roll of attorneys licensed to practice law in Illinois. In January 1979, this court ordered that Mitan be disbarred for making false statements and omitting material information in his application for admission to the practice of law in Illinois. (*In re Mitan* (1979), 75 Ill. 2d 118.) This court found that Mitan had, among other things: concealed the fact that he was a convicted felon, failed to disclose three separate arrests which did not lead to conviction, misstated his date of birth, and failed to reveal a prior legal change of name as well as a previous marriage and divorce. After detailing the "pattern of falsehood and deception" in the sworn statements and questionnaires Mitan submitted to the Committee on Character and Fitness, the court concluded that Mitan's application evi-

denced "a calculated effort *** to frustrate any meaningful examination and investigation of the applicant's fitness to practice law." (75 Ill. 2d 118, 126.) Disbarment was required, the court held, because Mitan's concealment of his felony conviction (for involvement in a confidence game) constituted a fraud upon the court, and his application was replete with other falsehoods and omissions. The order disbarring Mitan was stayed until January 9, 1980.

In this matter, three principal issues are presented for decision: (1) whether either section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat., 1986 Supp., ch. 110, par. 2—611) or the court's inherent power to govern the practice of law in this State permits review of attorney conduct in the preparation and filing of a petition for reinstatement, and (2) if so, whether sanctions should be imposed against the attorneys who prepared and filed Mitan's petition; and (3) whether sanctions should be imposed upon the Administrator of the Attorney Registration and Disciplinary Commission (the ARDC) for a violation of the supreme court rule requiring the Administrator to maintain the confidentiality and privacy of ARDC investigations (107 Ill. 2d R. 766).

In June 1985, Mitan retained the following attorneys for the purpose of assisting him in the preparation of a petition for reinstatement as an attorney: Daniel M. Pierce and Jeffrey P. DeJong, both of Altheimer & Gray; Jerold S. Solovy of Jenner & Block; and M. Cherif Bassiouni, a professor of law at DePaul University College of Law. As an initial matter, Pierce drafted a petition seeking an executive pardon for Mitan's felony conviction, then nearly 25 years old. The petition, which listed only Pierce as counsel, was filed with the Illinois Prisoner Review Board on July 29, 1985. It did not disclose that Mitan was a disbarred attorney.

In October 1985, Mitan appeared before the Prisoner Review Board, with Pierce as his counsel. A copy of a transcript prepared from an audio recording of the proceeding is included in the record before us. It reveals that Pierce, in introducing Mitan to the Prisoner Review Board, made no reference to the fact that Mitan was a disbarred attorney, though he stated that Mitan had graduated from DePaul University College of Law. In a sworn statement made to the Board before questioning, Mitan stated that he was sorry about his felony conviction and expressed his desire "to put it behind me and go on with my life." The following questions were then asked of Mitan and answered by him under oath:

"BOARD MEMBER: Is there any other specific reason why you need a pardon? Did you finish in law?

MITAN: Yes, I did.

BOARD MEMBER: Have you taken the bar exam?

MITAN: I would need a pardon here.

BOARD MEMBER: Are you employed now?

MITAN: Yes, I work for—

BOARD MEMBER: There's no mention here about your employment.

PIERCE: Self-employed.

MITAN: I'm self-employed. I'm self-employed. I'm in the real estate business. We purchase on sale lease-back arrangements and obtain investors.

\* \* \*

BOARD MEMBER: Do you plan to take the bar?

MITAN: Yes."

Following the proceeding, the Board recommended an executive pardon, which was granted by the Governor on April 7, 1986.

According to an affidavit filed by John A. Holtaway, senior counsel for the ARDC, in a letter dated May 5, 1986, Pierce first advised the ARDC that he had been retained to represent Mitan in a reinstatement proceeding. In the letter, Pierce requested that materials in the

ARDC's file on Mitan be made available for his review. Shortly thereafter, Pierce and Holtaway conferred by telephone and arranged to meet on May 16, 1986, at the ARDC's Chicago office. At the meeting, Pierce again requested to see the ARDC files on Mitan. Holtaway told Pierce that information regarding Mitan was contained in numerous ARDC files, and that it would take time to assemble and produce the information. At Holtaway's request, John C. O'Malley, Deputy Administrator of the ARDC, joined the meeting.

Deputy Administrator O'Malley told Pierce that the Administrator believed Mitan was not a fit candidate for reinstatement and, more specifically, that he believed that Mitan had continued to practice law after his disbarment. He suggested that Pierce question Mitan as to his business relationship with the following persons: Eunice Royal, Janet DeAndrea, Jan McDaniels, Pryor Owens, Stanley Wilcox, Thomas Jordan, Vernon Wesby, Ernest Powell, Robert McAuliffe, and Joseph Rosin. The Deputy Administrator explained that if Pierce queried Mitan as suggested, and if Mitan told the truth, Pierce would learn about Mitan's alleged unauthorized practice of law. An affidavit filed by Deputy Administrator O'Malley indicates that he further told Pierce that if, after questioning Mitan or interviewing the above-named individuals concerning Mitan's activities, Pierce still believed that Mitan was a suitable candidate for reinstatement, the ARDC would compile and make available for inspection the information it possessed relating to Mitan.

In a second telephone conversation, on May 20, 1986, Pierce asked Holtaway to "send over" copies of the ARDC's information and material on Mitan. There is no indication in Holtaway's affidavit what his reply was to Pierce's third request to see the relevant ARDC information. Later, however, Holtaway told Deputy Administrator O'Malley about the conversation and it was then de-

cided that the ARDC would not begin assembling the requested material until Pierce confirmed that he had questioned Mitan about his association with the aforementioned persons. It is not apparent from either Holtaway's or the Deputy Administrator's affidavits whether Pierce ever received notice of the ARDC's decision. Holtaway states that he did not hear from Pierce again until Mitan's petition for reinstatement was filed with our court, over seven months later.

On November 5, 1986, S. Allen Early, Jr., and S. Allen Early III, attorneys licensed to practice in Michigan but not in Illinois, filed a petition to participate as attorneys on behalf of Mitan in proceedings for his reinstatement. This court allowed the petition on December 8, 1986; however, the Earlys never filed a petition for reinstatement.

On December 31, 1986, Mitan filed a verified petition for reinstatement pursuant to Supreme Court Rule 767 in our court (107 Ill. 2d R. 767). The petition is 25 pages in length and appended thereto are 110 pages of exhibits. In addition to its verification by Mitan, the petition is signed by Pierce and lists Solovy, DeJong, and Pierce as "of counsel." The petition is neither signed by Bassiouni, nor does it list him as "of counsel." Pursuant to our Rule 767(f), the petition was referred to an ARDC hearing panel. 107 Ill. 2d R. 767(f).

On or about January 13, 1987, the Administrator initiated an investigation into Mitan's petition for reinstatement. In aid of its investigation, the ARDC began to organize and compile the material on Mitan from its various files. On February 9, 1987, Pierce and Holtaway appeared in the United States District Court for the Northern District of Illinois on a motion by the Administrator seeking access to Federal grand jury records involving Mitan. Following the proceeding, Pierce once more asked Holtaway when he would be allowed to re-

view the ARDC's material on Mitan. This time Holtaway told Pierce that he could do so at any time and suggested that Pierce set aside two days because the material was voluminous. Upon learning from Holtaway that the hearing before the Hearing Board on Mitan's petition was scheduled for May 6, 1987, Pierce stated in effect that there was plenty of time to examine the ARDC's documents and records.

On March 23, 1987, DeJong met with Holtaway at the ARDC's Chicago office in connection with the Administrator's request that Mitan produce certain documents. DeJong asked Holtaway when he could inspect the ARDC's material pertaining to Mitan. Holtaway answered that DeJong could make an appointment for any time, suggesting also that DeJong set aside several days for the inspection. However, an appointment was not made at that time.

On April 7, Holtaway had a telephone conversation with Bassiouni regarding a subpoena seeking production of documents related to Bassiouni's representation of Mitan which the Administrator was attempting to serve. According to Holtaway's affidavit, Bassiouni related that Mitan had consulted with him about preparing a petition for reinstatement and that he had recommended that Mitan retain the law firm of Jenner & Block. Bassiouni stated that he was "of counsel" in Mitan's effort for reinstatement. He explained that his role was to review drafts of the petition that Jenner & Block had prepared. With regard to the subpoena, Bassiouni claimed that he had no documents to produce and, even if he did, that such documents would be protected by the attorney-client privilege. In a subsequent letter to Holtaway, which is included in the record before us, Bassiouni again asserted that since the material sought by the subpoena related exclusively to his representation of Mitan, the material would be covered by the attorney-client privilege.

Repeating his earlier claim that he had nothing in his files or records relating to Mitan's petition, Bassiouni maintained that the question whether the subpoenaed materials were privileged was therefore "moot."

The Administrator served a notice of deposition on Mitan on April 13. Three days later, on April 16, DeJong and Mitan made a partial inspection of the ARDC's investigative materials on Mitan and requested photocopies of the material. In a telephone conversation on April 21, DeJong advised Holtaway that Mitan had decided to withdraw his petition for reinstatement. DeJong stated that he still wished to obtain the photocopied material on Mitan, explaining that five years from now Mitan might decide to file another petition for reinstatement. According to Holtaway, DeJong also requested, on behalf of Mitan, that the ARDC agree that Mitan's motion to withdraw the petition would not be made public. Holtaway informed DeJong that any motion to withdraw the petition would be, like the petition itself, a public document.

On April 22, Mitan, by his attorneys Pierce, Solovy and DeJong, filed in our court a motion for leave to withdraw his petition for reinstatement. The motion states that Mitan has moved to withdraw the petition because he can no longer "afford the cost of pursuing the [p]etition."

On April 30, the Administrator filed in our court a response to Mitan's motion to withdraw and a motion for appropriate sanctions against Mitan and attorneys Pierce, Solovy, DeJong and Bassiouni, along with a memorandum in support. In his response, the Administrator states that he has no objection to Mitan's motion to withdraw. The Administrator's motion for appropriate sanctions is based on a preliminary investigation, which, the Administrator avers, has revealed that Mitan's petition for reinstatement is "manifestly fraudulent and friv-

olous." Relying on section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat., 1986 Supp., ch. 110, par. 2—611) and the inherent powers of the court, the Administrator requested that this court issue a rule to show cause why Mitan should not be held in contempt of court for filing a fraudulent petition for reinstatement. Relying further on section 2—611, the Administrator also requested the issuance of a rule to show cause why Pierce, Solovy, DeJong and Bassiouni should not be sanctioned for filing Mitan's fraudulent and frivolous petition.

On May 19, Pierce, Solovy and DeJong filed a motion to strike the Administrator's motion for sanctions and for imposition of sanctions against the Administrator, and submitted a memorandum of law in support. The motion and supporting memorandum argue that section 2—611 does not apply to these proceedings, that the Administrator has failed to demonstrate that counsel failed to conduct a reasonable inquiry before filing the petition, and that the Administrator's motion for appropriate sanctions violates the Administrator's duty of confidentiality and privacy as established by Supreme Court Rule 766 (107 Ill. 2d R. 766).

On May 20, Bassiouni filed a motion to dismiss the Administrator's motion for sanctions and for imposition of sanctions against the Administrator. In his motion, Bassiouni states that his legal representation of Mitan ended in April 1986, eight months before Mitan filed his petition for reinstatement. He argues that section 2—611 does not apply to proceedings in this court involving petitions for reinstatement. Bassiouni argues that, even assuming section 2—611 applies, the Administrator's motion for sanctions should be dismissed as to him because he neither signed the petition nor entered an appearance on Mitan's behalf in his bid for reinstatement. Finally, Bassiouni asserts that because the Administrator has improperly joined him as a respondent in his motion for

sanctions, the Administrator should bear his reasonable legal fees and costs incurred in defending against it.

On June 15, the Administrator filed his reply and supporting memorandum to the motions to strike the Administrator's motion for appropriate sanctions and for sanctions against the Administrator filed by Bassiouni, Pierce, Solovy and DeJong. In his reply, the Administrator argued that Bassiouni was properly joined in his motions for sanctions; suggested ways in which Mitan's counsel might have conducted a reasonable inquiry into Mitan's eligibility for reinstatement; clarified that he was relying on both section 2—611 and the court's inherent powers in his request for sanctions against Mitan and attorneys Pierce, Solovy, DeJong and Bassiouni; and responded to the attorneys' motions for sanctions. Over 850 pages of exhibits accompany the Administrator's reply.

On the same day the Administrator filed his reply, Mitan, represented by new counsel, filed a response and supporting memorandum to the Administrator's motion for appropriate sanctions. Mitan urged in his response that the court grant his motion to withdraw his petition for reinstatement and dismiss the entire proceeding, including the Administrator's motion for appropriate sanctions.

On June 19, Pierce, Solovy, and DeJong filed a motion to strike the Administrator's reply or, alternatively, for leave to file a surreply. In support of the motion to strike, they argue that the Administrator raises new issues and introduces new evidence not contained in his original motion for sanctions. We have examined the contentions in the pending motion to strike and find that the exhibits and the arguments raised by the Administrator's reply are directly related and responsive to the arguments first made in the motions to strike the Administrator's motion for sanctions and for sanctions

against the Administrator. We therefore deny the motion to strike the Administrator's reply. In view of the decision reached in this opinion, it is unnecessary to give Pierce, Solovy, and DeJong an opportunity to respond to the Administrator's reply, and we therefore deny their alternative motion for leave to file the surreply memorandum which they have tendered to this court.

On June 22, we heard oral argument on the various motions pending in this matter. On June 26, this court, on its own motion, issued a rule ordering Mitan "to show cause, in writing, why he should not be held in contempt of court for filing a fraudulent petition for reinstatement." The rule to show cause directed Mitan to file an answer on or before July 2, and ordered Mitan to appear before our court on July 8 for a hearing on the rule to show cause. On July 2, Mitan filed a request for clarification of the rule on the grounds that the rule did not specify whether it contemplated a citation for civil rather than criminal contempt, or for conduct direct rather than indirect in character, and on the ground the court did not recite in the rule any factual particulars for its observation that Mitan's petition "may be fraudulent."

Following the July 8 hearing, which focused solely on Mitan's request for clarification, the court entered an order allowing the Administrator 10 days in which to file a verified petition for a rule for Mitan to show cause why he should not be held in indirect criminal contempt of court. Mitan was given 10 days to file an answer to the Administrator's verified petition.

The Administrator filed his verified petition for a rule to show cause on July 17. Thereafter, Mitan filed a series of motions. On July 24, he filed a motion to substitute counsel. Four days later, on July 28, Mitan filed a motion to dismiss the Administrator's verified petition for a rule to show cause. He also filed a motion for an

order granting his April 22 motion to withdraw his petition for reinstatement and, alternatively, requested leave to file an amended petition. On July 29, Mitan filed a motion for an extension of time within which to file his answer to the verified petition for a rule to show cause.

By an order entered on July 29, this court allowed Mitan's motion to substitute counsel; took under advisement his motion to dismiss the verified petition for a rule to show cause, together with his motion for an order granting his earlier motion to withdraw his petition for reinstatement or, alternatively, for leave to file an amended petition; and continued Mitan's motion for an extension of time to file an answer, allowing him five days from any order denying his motion to dismiss within which to file the answer. On August 3, the Administrator filed objections to the motions taken under advisement. On August 21, Mitan's motion to dismiss the verified petition for a rule to show cause was denied, as was his motion for an order granting his April 22 motion to withdraw his petition for reinstatement or, alternatively, for leave to file an amended petition for reinstatement. Mitan filed his answer to the Administrator's verified petition for a rule to show cause on August 25.

We first address the question whether section 2—611 applies to the filing, in this court, of a verified petition for reinstatement as an attorney. Modeled largely after recently amended Rule 11 of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 11), section 2—611 provides in pertinent part:

> "Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or

accompanied by affidavit. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after responsible inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this Section, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a representative party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee. *** All proceedings under this Section shall be within, and part of the civil action in which the pleading, motion or other paper referred to herein has been filed, and no violation or alleged violation of this Section shall give rise to a separate cause of action, or another cause of action within the civil action in question, by, on behalf of or against any party to the civil action in question, and by, on behalf of or against any [other] attorney or insurance company involved in the civil action in question." Ill. Rev. Stat., 1986 Supp., ch. 110, par. 2—611.

Prior to its amendment last year, section 2—611 subjected a party to sanctions for pleading untrue allegations and denials without "reasonable cause." (Ill. Rev. Stat. 1985, ch. 110, par. 2—611.) Like Federal Rule 11, newly amended section 2—611 provides that an attorney or a party who signs a pleading, motion, or other paper thereby certifies that a "reasonable inquiry" was made into the facts and law that support it, and that the filing "is well grounded in fact and warranted by existing law

or a good faith argument for the extension, modification, or reversal of existing law." Only one Illinois court of review has as yet had the opportunity to apply amended section 2—611, and that decision, which rested on a Federal case involving Federal Rule 11, is of no significance here. (*Frisch Contracting Service Co. v. Personnel Protection, Inc.* (1987), 158 Ill. App. 3d 218.) Nor has our research disclosed any Federal case law involving Federal Rule 11 that would lend analogously to our resolution of the question whether section 2—611, by its terms, reaches to the filing of a verified petition for reinstatement. Given the absence of authority on this specific issue, and on current section 2—611 in general, we necessarily write on a clean slate.

The Administrator's sole argument in support of his contention that section 2—611 is applicable in this matter is that the statute, in authorizing sanctions, does not limit its use of the word "court" to the lower courts of this State. If the legislature did not intend for our court to have the power to impose sanctions pursuant to section 2—611, he argues, then it could have and should have said so. We are not persuaded. The question here is not whether this court may impose sanctions pursuant to section 2—611 in other, appropriate cases, but rather the very different and very narrow question whether the statute applies to the unique situation where an allegedly false petition for reinstatement has been filed.

While it is true that section 2—611 does not expressly preclude this court from availing itself of its sanctioning power in appropriate cases, the plain language of section 2—611 offers no support for the proposition that the statute, without more, applies to reinstatement proceedings. This matter was initiated by the filing of a verified petition for reinstatement pursuant to our Rule 767. A request for reinstatement to the practice of law is based upon the inherent powers of the court to admit attor-

neys and to govern the practice of law in this State. (*In re Nesselson* (1979), 76 Ill. 2d 135, 137-38.) The petition is first referred to a hearing panel, which determines, together with other factors the panel deems appropriate, whether the petitioner is rehabilitated and presently possesses good character and current knowledge of the law. (107 Ill. 2d R. 767(f).) Either the Administrator or a petitioner for reinstatement may file exceptions to the hearing panel's report and recommendations with a review board. A petitioner may file exceptions in this court to the report and recommendations of the review board; the Administrator may petition the court for leave to file exceptions to the review board's report and recommendations. In short, the procedure for the hearing and review of the petition is the same as that for attorney disciplinary cases. (107 Ill. 2d Rules 767(h), 753.) Thus, a proceeding for reinstatement as an attorney is not a civil lawsuit, but an investigation into the character and conduct, from the date of disbarment, of a former officer of the court.

The plain language of section 2—611 affords no basis for its application in actions other than civil lawsuits. No less than four times does section 2—611 make clear that it shall apply only in civil actions:

"All proceedings under this Section shall be within and part of the *civil action* in which the pleading, motion or other paper referred to herein has been filed, and no violation or alleged violation of this Section shall give rise to a separate cause of action, or another cause of action within the *civil action* in question, by, on behalf of or against any party to the *civil action* in question, and by, on behalf of or against any attorney or insurance company involved in the *civil action* in question." (Emphasis added.) (Ill. Rev. Stat., 1986 Supp., ch. 110, par. 2—611.)

Like disciplinary proceedings, proceedings for reinstatement are *sui generis*, being neither civil nor criminal in

nature. (*Cf. In re Echeles* (7th Cir. 1970), 430 F.2d 347, 349 ("disbarment and suspension proceedings are neither civil nor criminal in nature but are special proceedings, sui generis, and result from the inherent power of courts over their officers"); *In re Czachorski* (1969), 41 Ill. 2d 549, 554 (same).) The *sui generis* status of reinstatement proceedings follows, not only from the fact that such proceedings are based upon "the inherent powers of courts over their officers," but also from the special burden of proof a petitioner bears. A petitioner must prove "his or her qualification for reinstatement by clear and convincing evidence." (*In re Carnow* (1986), 114 Ill. 2d 461, 469.) We conclude, therefore, that section 2—611 neither authorizes nor prohibits the imposition of sanctions where an allegedly false verified petition for reinstatement is filed pursuant to Supreme Court Rule 767.

Our conclusion that section 2—611 does not affirmatively authorize imposition of sanctions for the filing of a baseless verified petition for reinstatement does not deprive us of our own authority to do so. The duty and authority of the court to safeguard the public interest and maintain the integrity of the legal profession does not depend upon legislative authorization or other approval. As long ago as *In re Application of Day* (1899), 181 Ill. 73, this court held that it had the inherent power to govern admission to the practice of law in Illinois. It can no longer be disputed that our court possesses the inherent and exclusive power to regulate the practice of law in this State and to sanction or discipline the unprofessional conduct of attorneys admitted to practice before it. *In re Nesselson* (1979), 76 Ill. 2d 135, 137-38; *In re Reynolds* (1965), 32 Ill. 2d 331, 336.

We are not unmindful that our scrutiny of the attorney conduct in connection with the investigation and filing of Mitan's petition for reinstatement must necessarily be by a previously unannounced standard. Although

ARDC Rule 402 specifies the information required in a verified petition for reinstatement filed under our Rule 767, no present court or ARDC rule addresses what level of prefiling inquiry is required in gathering that information, or any other relevant to a petitioner's rehabilitation. Nevertheless, we believe that Mitan's various attorneys had a duty to conduct an objectively reasonable inquiry into the relevant facts and law supporting Mitan's petition for reinstatement, not unlike the standard embodied in Federal Rule 11 and section 2—611. Having moved for imposition of sanctions on that basis, albeit relying on section 2—611, it was incumbent on the Administrator to prove that no objectively reasonable inquiry was made into the pertinent facts and law supporting Mitan's petition. Although the question is close, we hold on this record that the Administrator has not proved that Mitan's various attorneys failed to conduct an objectively reasonable inquiry into the relevant facts and law supporting the petition for reinstatement filed on his behalf.

In arguing that attorneys Pierce, Solovy, DeJong, and Bassiouni did not conduct a reasonable inquiry to determine whether Mitan's petition was well grounded in fact and law, the Administrator relies heavily on the fact that an inspection of the ARDC files on Mitan was not made until April 16, 1987, some 4½ months after the petition was filed. We agree with the Administrator that it was of great importance that Mitan's attorneys take into account whatever relevant material the ARDC already possessed concerning Mitan, particularly since Pierce was informed that the Administrator believed that Mitan was engaged in the continuing unauthorized practice of law. The information was important not only because it would have apprised counsel of the basis for the Administrator's belief, but because it would, presumably, have helped them intelligently interrogate Mitan as to his

business relationship with those persons named by Deputy Administrator O'Malley. We believe, however, that the Administrator must bear responsibility, as must counsel, for a failure to communicate and to set a prefiling date for inspection of the ARDC's relevant files.

The record shows that Pierce requested not once but thrice to review the ARDC's files on Mitan before the petition was filed. In a letter dated May 5, 1986, Pierce first requested that the ARDC make available for his examination its materials concerning Mitan. At a meeting at the ARDC's office in Chicago on May 16, Pierce again asked to see the files on Mitan. Holtaway told Pierce that it would take time to assemble the material inasmuch as there was no single file on Mitan. Pierce was then given names of persons about whom it was suggested he should ask Mitan. No information was ever given to Pierce about those persons, other than that Pierce would learn of Mitan's ongoing unauthorized practice of law if Mitan told the truth when asked about those persons. The Deputy Administrator told Pierce that if Pierce believed that Mitan was a suitable candidate for reinstatement after discussing with Mitan the persons named or interviewing those persons, the ARDC would begin to assemble and then make available for inspection the requested material.

On May 20, Pierce asked whether Holtaway would send him copies of the ARDC's materials relating to Mitan. Holtaway gives no indication in his affidavit whether he agreed to or denied Pierce's third request for access to the ARDC's materials on Mitan. Holtaway states, however, that he told Deputy Administrator O'Malley about his conversation with Pierce and that it was decided that the requested material would not be assembled until after Pierce confirmed that he had questioned Mitan about the named individuals. There is no evidence that Pierce or any of Mitan's other attorneys

was ever made aware of this decision. Not until January 13, almost two weeks after the petition was filed, did the ARDC begin to assemble the requested material.

We believe that the Administrator had, upon request, a duty to make available for inspection the information he possessed relevant to Mitan's fitness for reinstatement to the practice of law. Because the requested information was not contained in a single source, it was understandable that a reasonable amount of time would be needed to comply. It was also understandable that the ARDC could not "send over" its investigative materials for Pierce's inspection. However, we believe that the ARDC erred in attaching a condition precedent to Pierce's review of the materials at the ARDC's office. It is hard to conceive how Pierce or Mitan's other attorneys could have intelligently interrogated Mitan or the named individuals armed with no information whatsoever about those individuals or their dealings with Mitan, if any. It made no sense to suggest that counsel could separate fact from fiction merely from the bare list of names provided.

Compounding the error was the uncommunicated decision not to compile, or make available, the requested material until Pierce had formally acknowledged that Mitan had been questioned. Further, counsel was never asked whether Mitan had been interrogated. Instead, the ARDC waited until after Mitan's petition was filed before it began to compile the information for its own investigation into the petition. In February 1987, one month after the filing of the petition, Pierce was told that he could now examine the material he had first requested in May 1986. Informed that Mitan's hearing before the hearing panel was scheduled for May 6, Pierce stated that there was plenty of time in which to review the ARDC files on Mitan. A partial review of those files did not take place until April 16.

We think that Pierce could have pressed more vigorously for an inspection of the pertinent ARDC files before Mitan's petition was filed. Certainly, he should have made an appointment in February 1987 when he was first told that he could inspect the requested material at any time. But we cannot ignore that the offer, which came after the petition for reinstatement was filed, was too little, too late.

As the Administrator acknowledges, a petitioner invariably possesses the information and knowledge most relevant to his fitness for reinstatement. The subpoena power vested in the Administrator recognizes this fact. A petitioner who seeks to obtain reinstatement through fraud and deception must do either one of two things. He must either deceive his attorneys, or he must enlist their voluntary aid in his fraudulent scheme. In the case of the former, it may be that the ARDC is in possession of information that will reveal the petitioner's artifice or at least raise reasonable suspicions. For this reason, it is essential that counsel have an opportunity to review the relevant material the ARDC possesses in anticipation of the filing of a petition for reinstatement. We believe that a more cooperative stance was warranted here on the part of the ARDC.

The Administrator argues that counsel failed to conduct a rudimentary investigation of the material provided to them by Mitan. The Administrator points to Mitan's statement in his petition that he was enrolled as a full-time student in the Executive Program of the Graduate School of Business of the University of Chicago during 1985 and the spring semester in 1986. He states in the petition, "I am not attending this year, but I plan to resume my studies at the University of Chicago." The Administrator notes that had counsel obtained a copy of Mitan's record at the University of Chicago, a review of it would have revealed, among other things, the fol-

lowing: Mitan was not currently enrolled at the University of Chicago because he had been dropped for poor academic performance; Mitan had represented that he was an attorney licensed to practice law; Mitan represented that Mitan and Associates, Ltd., was a viable entity; and Mitan claimed that his annual salary and stock options was over $100,000.

The exhibits proffered by the Administrator show that all of the above representations were made by Mitan in his application materials for admission to the Executive Program. By a letter dated September 2, 1986, a copy of which appears as another ARDC exhibit, Mitan was officially notified by the university that his enrollment was being terminated. The stated reason for termination was that Mitan had previously received two "F"s" and had just received a "D –" after retaking one of his failed classes over the summer. In doing so, Mitan fell short of the requirement that he earn a "C" to remain in the program.

The Administrator concedes it was necessary for him to issue a subpoena for Mitan's academic record and application materials at the University of Chicago, but contends that counsel could have obtained the same with Mitan's consent. Be that as it may, the record shows that counsel did inquire with officials at the University of Chicago. In response to their inquiry, they received a letter from Walter D. Fackler, director of the Executive Program of the University of Chicago Graduate School of Business. The letter, dated May 10, 1986, confirmed that Mitan had been enrolled in the Executive Program since September 1985, and that he was currently enrolled in the spring quarter of the first year of the two-year M.B.A. program. The letter is included as an exhibit to Mitan's petition for reinstatement.

Because counsel did not discover Mitan's dismissal, the Administrator reasons that it must be presumed that

counsel relied on the explanation Mitan gave them for his interrupted studies. Not knowing what, if any, explanation Mitan gave to counsel, we are not in a position to say that counsel's reliance was unreasonable. Having recently received official confirmation that Mitan was currently enrolled, and there having been no intimation on the part of the university that Mitan was in anything but good academic standing, there was little reason for counsel to believe or even suspect that he had been dismissed. In any event, we do not believe that a reasonable inquiry into whatever explanation Mitan gave counsel would entail obtaining his application materials for admission to the Executive Program, materials in no way relevant to the nature or circumstances of his interruption of studies.

The Administrator argues further that Mitan's petition gives the impression that he did not maintain a personal checking account from the date of disbarment until 1984. ARDC Rule 402(20) requires that a petitioner provide in his verified petition for reinstatement:

> "The names and address of all financial institutions at which petitioner had, or was a signatory to, accounts, safety deposit boxes, deposits or loans [from the date the petitioner was disbarred]: the number of each account, box, deposit or loan was opened, approved or made; and the date each account, box or loan was closed, discharged or paid."

We are unable to conclude whether the Administrator is correct because Mitan lists personal "Account No. 107—0312" as having been opened at the Cosmopolitan National Bank in 1981 and closed in 1984, but fails to indicate whether the account is a savings or a checking account.

The Administrator argues next that counsel apparently failed to review the records of personal checking account number 634—204, an account maintained by Mi-

tan at the First National Bank of Highland Park since 1984. The account is listed in Mitan's petition. The Administrator notes that the cancelled checks for account 634—204 reveal, among other things: that Mitan was not using the account to pay for personal expenses such as groceries or utilities; and that in April 1985, Mitan paid S. Allen Early, Jr., and S. Allen Early III (the Michigan attorneys whom this court later allowed to participate in Mitan's reinstatement proceedings) $7,000 in legal fees.

None of the 44 checks drawn on account 634—204 reveal any undisclosed item that would come within the terms of ARDC Rules 402(8) or 402(20). Moreover, considering that Mitan's wife maintained a separate checking account, there is little significance to the fact that Mitan did not use account 634—204 to pay his family's living expenses. The check to the Earlys bears only the notation "legal fees." Because counsel was retained one month after the Earlys had been paid and because the Earlys were not licensed to practice in Illinois, there was hardly any basis on which to speculate that they had been hired for precisely the same purpose. That Mitan did not tell his counsel the purpose of his hiring the Earlys reflects on Mitan rather than counsel.

The Administrator would also hold counsel responsible for knowing the source of funds deposited into account 634—204. However, the Administrator's exhibits show that the monthly account statements for account 634—204, like other checking statements, disclose the amount but not the source of the deposits credited to the account.

The Administrator also submits that counsel might have conducted a reasonable inquiry by obtaining and reviewing a customer application Mitan submitted to K and S Commodities, Inc., in 1982. The Administrator observes that had counsel done so, they would have learned, among other things, the following which Mitan

did not disclose in his petition: that Mitan stated that he was employed by Mitan and Associates, Ltd.; that he claimed a gross income in excess of $60,000; and that he held a checking account at Banco di Roma. Inasmuch as the Administrator does not argue that the application was part of an account held with a "financial institution" within the meaning of ARDC Rule 402(20) or an "asset" or "financial obligation" within the meaning of the ARDC Rule 402(8), we find that there was neither a need nor a duty to obtain the application in conducting a reasonable inquiry into the facts supporting the petition.

We also reject the suggestion that counsel did not make a reasonable inquiry into a bankruptcy petition filed by Mitan in 1981 in the United States Bankruptcy Court for the Northern District of Illinois and captioned "In re W. Jason Mitan d/b/a LaSalle Investment, Debtor, 81 B 05643." ARDC Rule 402(6) required Mitan to provide in his petition: "A statement including the case caption, general nature, dates and disposition of every civil or criminal action which pended during the period of discipline to which petitioner was either a party or claimed an interest."

The above bankruptcy matter is set forth as required in Mitan's petition, along with nine other lawsuits which were pending during Mitan's disbarment to which he was a party or had an interest. The Administrator does not contend otherwise. Rather, he suggests that had counsel delved deep enough into this matter they would have found a petition for appointment of trustee filed by one of Mitan's creditors. To the otherwise unremarkable petition, the creditor had attached as "Exhibit B" a deposition of Robert E. McAuliffe, an attorney who has recently been censured by this court (*In re McAuliffe* (1987), 116 Ill. 2d 254). In the deposition, McAuliffe broached the names of 7 of the 10 individuals whom the ARDC had referred to in May 1986 when counsel re-

quested review of the ARDC files on Mitan. McAuliffe stated that he had been an associate of Mitan's and that Mitan had continued to practice law after his disbarment through attorney Stanley Wilcox and his firm, Wilcox and Associates.

Although the Administrator has not provided us with a description or index of the documents that supported his belief in May 1986 that Mitan was involved in the unauthorized practice of law, together with the 10 named individuals, it appears that McAuliffe's 1981 deposition figured prominently in it and with good reason. Unfortunately, counsel was not informed of the damning content of McAuliffe's deposition. We do not believe that counsel was required, without more, to look into every pleading and exhibit in each of the 10 lawsuits listed in Mitan's petition. The rules of the ARDC do not saddle counsel with so onerous a burden. ARDC Rule 402(6) requires only that counsel make an inquiry into the "general nature, dates and disposition" of each case which pended during a petitioner's disbarment. Here, McAuliffe's deposition was but one exhibit among several to a pleading that was itself wholly irrelevant to the task of identifying the general nature and disposition of the bankruptcy case.

We do not mean to suggest that counsel can blind themselves to what is readily apparent from a review of a petitioner's lawsuits to identify their general nature and disposition. Counsel may not "file now and investigate later." However, it is clear that ARDC Rule 402(20) does not impose a requirement that counsel comb through each and every pleading and exhibit without at least some reason to believe that an irregularity or other relevant information may be contained therein.

Having considered the Administrator's motion for appropriate sanctions against counsel, we conclude that the Administrator has not demonstrated that counsel failed

to conduct an objectively reasonable inquiry into the facts and law supporting Mitan's petition. Therefore, we deny the Administrator's motion for appropriate sanctions. Given our disposition of the Administrator's motion for sanctions, we deny as moot Bassiouni's motion to dismiss the Administrator's motion for sanctions as well as the motion of Pierce, Solovy and DeJong to strike the Administrator's motion.

It should be noted that the Administrator stated in his motion for sanctions that an investigation, separate from his preliminary investigation into Mitan's petition, was being conducted into Mitan's alleged unauthorized practice of law. In his verified petition for a rule to show cause filed on July 17, 1987, the Administrator states that his investigation is still "incomplete." We take this to mean that the Administrator's proof concerning this serious charge is forthcoming and, accordingly, we express no opinion on it here.

It remains for us to consider the motions for sanctions against the Administrator. Attorneys Pierce, Solovy and DeJong have asked us to impose sanctions on the Administrator on the ground that he violated our Rule 766. Subject to certain exceptions, Rule 766 provides: "Investigations conducted by the Administrator, [and] proceedings before the inquiry, hearing and review boards *** shall be private and confidential." (107 Ill. 2d R. 766.) The purpose underlying the general rule of privacy and confidentiality is to protect an attorney's reputation for honesty and integrity from the irreparable harm that might result if a publicly announced disciplinary investigation or charge later proved to be without substance. One of the express exceptions to the general rule of privacy and confidentiality applies to reinstatement proceedings. Rule 766(b)(1) provides in pertinent part: "Except for proceedings in the court, proceedings for reinstatement pursuant to Rule 767 *** shall be pri-

vate but not confidential." (107 Ill. 2d R. 766(b)(1).) Because the Administrator must give notice of the petition for reinstatement to certain persons (107 Ill. 2d R. 767(d)), confidentiality is not required. However, the Administrator's investigation into a petition, and all proceedings except those before the court, are to remain private. 107 Ill. 2d R. 766(b)(1).

The basis for counsel's motion is a sentence in the Administrator's supporting memorandum for his motion for sanctions which states that "the conduct of the lawyers who drew and filed [Mitan's] petition for reinstatement is now under scrutiny." Counsel contends that such a statement was a public announcement of a disciplinary investigation in violation of Rule 766. We disagree.

Although the complained-of sentence is somewhat ambiguous, we do not believe that it was intended to announce a disciplinary investigation or that it had that effect. We are persuaded by the Administrator's explanation that the sentence referred only to the fact that his motion for sanctions had placed the conduct of counsel, in filing Mitan's petition, before the scrutiny of this court. To be sure, section "C" of the Administrator's memorandum in support of his motions for sanctions is entitled "FURTHER INVESTIGATION." That section is devoted exclusively to advising our court of the Administrator's ongoing investigations. The complained-of sentence does not appear in this section; it appears in a section entitled "THE PETITION FOR REINSTATEMENT AND THE FACTS GATHERED BY THE ADMINISTRATOR'S PRELIMINARY INVESTIGATION." Nor does counsel suggest that there is even the slightest intimation that they have been singled out as the target of the ongoing disciplinary investigations described. We conclude that the Administrator has not violated Rule 766. Accordingly, the motion for sanctions against the Administrator is denied.

We also deny Bassiouni's motion for sanctions against the Administrator. His reliance on the signature requirement of section 2—611, and the fact that he did not sign Mitan's petition, is misplaced inasmuch as we hold herein that the statute applies only in civil cases. Further, in light of the fact that Bassiouni conceded that he had been retained by Mitan to assist in the preparation of his petition for reinstatement, we find that he was not improperly joined in the Administrator's motion for sanctions.

For the reasons stated, the motion of Pierce, Solovy and DeJong to strike the Administrator's reply is denied and their alternative motion for leave to file a surreply memorandum is denied; the motion of the Administrator for appropriate sanctions is denied; the motion of Bassiouni to dismiss the Administrator's motion for appropriate sanctions is denied; the motion of Pierce, Solovy and DeJong to strike the Administrator's motion for appropriate sanctions is denied; the motion of Bassiouni for sanctions against the Administrator is denied; and the motion of Pierce, Solovy and DeJong for sanctions against the Administrator is denied. We reserve ruling on Mitan's motion to withdraw his petition for reinstatement.

*Motions denied;*
*ruling on motion to withdraw*
*petition for reinstatement reserved.*

JUSTICE SIMON took no part in the consideration or decision of this case.