# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Gilbert*, 2013 IL App (1st) 103055

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEVI GILBERT, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-10-3055 |
| Filed<br>Rehearing denied | March 19, 2013<br>April 18, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant failed to establish that his counsel in his trial for felony murder and armed robbery was ineffective, notwithstanding his contentions that his counsel was facing suspension by the ARDC and had not notified defendant of the pending suspension and that his counsel suffered from dementia; however, defendant's convictions for armed robbery were vacated on the ground that those convictions were the predicate felonies on which the first degree murder convictions were based. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-CR-4088(02); the Hon. Marcus R. Salone, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |

Counsel on Appeal

Michael J. Pelletier, Alan D. Goldberg, Jonathan Steffy, and Heidi Linn Lambros, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary Needham, and William L. Toffenetti, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion.

Justices Quinn and Simon concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Levi Gilbert, appeals his convictions after a jury trial of first degree murder and two counts of armed robbery, and his sentence of 20 years' imprisonment and two concurrent terms of six years' imprisonment. On appeal, Gilbert contends his case must be remanded for a new trial where (1) he was denied his sixth amendment right to counsel because at the time of trial his counsel faced a one-year suspension of his law license and suffered from dementia, and counsel never informed him of these occurrences; and (2) his counsel committed numerous trial errors, rendering his assistance ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). Gilbert also argues that we must vacate his two convictions for armed robbery because they were the predicate felonies for his felony murder conviction. For the following reasons, we affirm Gilbert's conviction for felony murder and vacate his convictions for armed robbery.

¶ 2                                    JURISDICTION

¶ 3        The trial court sentenced Gilbert on October 4, 2010. He filed a notice of appeal on October 4, 2010. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 603 and 606, governing appeals from a final judgment of conviction in a criminal case entered below. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 603 (eff. Oct. 1, 2010); R. 606 (eff. Mar. 20, 2009).

¶ 4                                    BACKGROUND

¶ 5        Gilbert and codefendant Michael Woods were charged with armed robbery and felony first degree murder for the police shooting of another codefendant, Cleon Jones. Each defendant was tried simultaneously before separate juries. Gilbert was represented by attorney William E. Brooks. At the time of trial, which began on August 6, 2008, and ended

on August 11, 2008, Brooks faced a recommendation by the Attorney Registration and Disciplinary Commission (ARDC) hearing board that his license be suspended for one year. The review board affirmed this recommendation on December 12, 2008, and the suspension began on March 16, 2009, when the supreme court finalized the determination. While representing Gilbert, Brooks did not inform him of the ARDC's recommendation.

¶ 6      At trial, Officers Sliva and Ferraro testified as to the events of January 17, 2006. Acting on information they received, the officers conducted surveillance at the Auto Zone store located at Diversey and Central Avenues in Chicago, Illinois. They set up surveillance about 300 yards from the store. Around 10 p.m., they noticed a maroon car pull into the Auto Zone parking lot. Three men exited the car and entered the store. One of the men pulled up the hood of his jacket, and Officer Sliva saw another man, wearing a dust mask, lock the front door from inside the store. The officers believed they were witnessing a robbery and called other units for assistance. As they waited, Officers Sliva and Ferraro positioned themselves behind a parked car about 10 to 15 feet from the front door of the store.

¶ 7      Officers Brosnan and Bone arrived at the scene and positioned themselves behind the maroon car. Other officers took positions at the rear and side of the building. Eventually, the officers in front of the store saw a man wearing a black hoodie jacket with a dust mask over his face walk from behind the counter in the store toward the front door. The man carried keys in his left hand and a handgun in his right hand. He unlocked the door and as he opened it the officers shouted, "Police, drop the gun." Officers Sliva and Brosnan testified that the man raised his gun and pointed it at Sliva and Ferraro. The officers fired their weapons, 39 rounds in all, within a second or two. The man took a couple of steps back and fell into the store.

¶ 8      When the officers entered the store, they found Cleon Jones on the floor. They recovered a bluesteel revolver about 15 to 20 feet behind Jones. No fingerprints were detected on the weapon. The officers also recovered three white envelopes containing United States currency from Jones. Jones died from a single gunshot wound to his chest.

¶ 9      Adrian Matos, the manager of the Auto Zone, and employees Jonathan Laluz and Oscar Pizano were working on the night of January 17, 2006. Matos and Pizano were in the front of the store when three men entered. Laluz was in back restocking parts. Two of the men wore painters' masks and one had a scarf tied around his face. The man with the scarf had a gun. The men took Matos' and Pizano's wallets, keys and phones, and ordered them to take them to the safe. They went into the office, and when the men ordered Matos to open the safe, he complied. The men then ordered Matos and Pizano to lie down and they tied Matos' and Pizano's hands with spark plug cables. When Laluz walked out from the back of the store, he ran into the man with the scarf, who took Laluz to the office. Laluz was then tied up. Matos, Pizano, and Laluz heard the men banging on the safe and then heard footsteps going to the front door of the store. They heard gunfire, but no one heard police shout, "Police, drop your gun" before the gunfire. Soon thereafter, police arrived and untied them.

¶ 10      Sergeant Lohman answered a call about a robbery in progress at the Auto Zone store just before 10 p.m. on January 17, 2006. He went to the side door of the building where other officers had set up a perimeter in case anyone tried to exit from that door. Sergeant Lohman

heard shouts of "Police, put the gun down" in front of the store. The officers then heard gunfire. After the shooting, the side door opened and codefendant Woods was seen holding a canvas bag as he pushed open the door. Gilbert was behind Woods. Woods said, "Oh, shit," and dropped the bag as he ran back into the store. Police entered the store through the side door and apprehended Woods and Gilbert inside the store.

¶ 11    At the close of the State's case, defense counsel moved for a directed finding, arguing that the State failed to prove that any of the three men were armed and that Gilbert was forced to participate. The trial court denied the motion.

¶ 12    Defense counsel called two witnesses, Officers Scott and McNamara. Officer Scott was positioned near the side entrance and did not observe anything before the shooting. He did hear shouts of "Police" just before the shooting. McNamara stood behind a sign about 30 to 40 feet from the officers who were near the front door of the store. He observed someone come out of the front door, but he could not see whether the person had anything in his hands. As the front door opened, people shouted, "Police" and the man raised his right arm toward Officers Sliva and Ferraro. McNamara then heard shots fired.

¶ 13    The jury found defendant guilty of armed robbery and felony murder. Gilbert filed a motion alleging ineffective assistance of counsel at trial and the court gave counsel leave to withdraw. A public defender was appointed to represent Gilbert in posttrial proceedings. Gilbert's new counsel then filed a motion for a new trial, alleging that trial counsel was ineffective for (1) including an alibi defense in his answer to discovery rather than a coercion defense; (2) failing to investigate witness CeCe O'Connor, who would have supported the coercion defense; (3) arguing jury nullification; (4) failing to offer a jury instruction on coercion; and (5) telling Gilbert not to testify at trial. At the hearing, counsel orally amended the motion to include the allegation that counsel was ineffective for failing to inform Gilbert that ARDC disciplinary action was pending against him.

¶ 14    The trial court conducted a *Krankel* hearing in which trial counsel testified. The trial court noted that an attorney under investigation by the ARDC "may be under some extraordinary pressure and distraction, and that may affect his performance." It may have explained trial counsel's filing of the alibi defense during pretrial discovery. However, the trial court also noted that counsel's strategy of jury nullification was a reasonable one given the evidence presented. The court concluded "that there were deficiencies in Mr. Gilbert's defense. But I do not believe the deficiencies affected the outcome of a caught inside robbery or armed robbery." It denied the motion and sentenced Gilbert to 20 years' imprisonment for felony murder, and a consecutive 6-year term for each armed robbery conviction, with the 6-year terms to be served concurrently with each other. Gilbert filed this timely appeal.

¶ 15                                              ANALYSIS

¶ 16    Gilbert first contends that he was denied effective assistance of counsel because his trial attorney faced a one-year suspension of his law license at the time of trial. To prevail on an ineffective assistance of counsel claim, Gilbert must show that (1) his counsel's performance was deficient so as to fall below an objective standard of reasonableness; and (2) the deficient performance prejudiced him so as to deny him a fair trial. *Strickland v. Washington*,

466 U.S. 668, 687-88 (1984). To demonstrate sufficient prejudice under the second prong, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

¶ 17    Gilbert argues that the ARDC hearing board found his counsel in violation of the Illinois Rules of Professional Conduct (Rules) (eff. Jan. 1, 2010), and counsel "was merely awaiting the Supreme Court's confirmation of that suspension" at the time of trial. Therefore, Gilbert's counsel was "unqualified" and incapable of representing him. Initially, we note that the record on appeal does not contain any transcripts of the proceedings before the hearing board, or any of the board's recommendations. Gilbert's brief refers to an appendix in footnote 2, in which the report and recommendation are attached; however, there is no appendix attached to the brief or in the record. The record also does not contain the final determination of our supreme court. Gilbert, as appellant, has the duty to present a complete record on appeal and any doubts arising from an incomplete record must be resolved against the appellant. *U.S. Minerals & Mining, Inc. v. Licensed Processors, Ltd.*, 194 Ill. App. 3d 428, 434 (1990). An appellant's arguments which depend on facts not contained in the record are not sustainable on appeal. *Palanti v. Dillon Enterprises, Ltd.*, 303 Ill. App. 3d 58, 66 (1999). Therefore, Gilbert cannot prevail on his claim that his trial counsel provided ineffective assistance because he faced a one-year suspension for violating the Rules.

¶ 18    It also appears that on the merits, Gilbert cannot prove that his trial counsel provided ineffective assistance based on his disciplinary status. From the appellant and appellee briefs, the facts show that the ARDC hearing board recommended the suspension of trial counsel's law license on September 4, 2007. Gilbert's trial took place from August 6 through August 11, 2008. The hearing board's recommendation was affirmed by the review board on December 12, 2008, and the supreme court finalized the suspension on March 16, 2009.

¶ 19    Our supreme court "possesses the inherent and exclusive power to regulate the practice of law in this State and to sanction or discipline the unprofessional conduct of attorneys admitted to practice before it. [Citations.]" *In re Mitan*, 119 Ill. 2d 229, 246 (1987). The court also has the sole authority to promulgate rules for attorney conduct and to discipline attorneys for violations of those rules. *Id.* Thus, our supreme court has adopted the Rules and appointed the ARDC to supervise attorney disciplinary proceedings. *People ex rel. Brazen v. Finley*, 119 Ill. 2d 485, 494 (1988). Rule 764 sets forth the duties of a disciplined attorney. It provides:

> "An attorney who is disbarred, disbarred on consent, or suspended for six months or more shall comply with each of the following requirements. ***
>
> * * *
>
> (b) Withdrawal from Law Office and Removal of Indicia as Lawyer. Upon entry of the final order of discipline, the disciplined attorney shall not maintain a presence or occupy an office where the practice of law is conducted. The disciplined attorney shall take such action necessary to cause the removal of any indicia of the disciplined attorney as lawyer, counsellor at law, legal assistant, legal clerk, or similar title.
>
> (c) Notification to Clients. Within 21 days after the entry of the final order of discipline, the disciplined attorney shall notify *** all clients whom the disciplined

attorney represented on the date of the imposition of discipline, of the following:

(1) the action taken by the supreme court;

(2) that the disciplined attorney may not continue to represent them during the period of discipline;

(3) that they have the right to retain another attorney; and

(4) that their files, documents, and other records are available to them, designating the place where they are available." Ill. S. Ct. R. 764 (eff. Aug. 27, 1990).

¶ 20    The Rules require an attorney whose license to practice law has been suspended to notify his or her clients of the suspension, and of their right to retain another attorney, within 21 days after the entry of the final order of discipline. In August of 2008, the time of Gilbert's trial, his trial attorney faced only the ARDC hearing board's recommendation of suspension. That recommendation was not affirmed by the review board until December 12, 2008, and both briefs agree that the supreme court finalized the suspension on March 16, 2009, well after Gilbert's trial. Counsel's duty to notify arose on March 16, 2009, or within 21 days thereafter. Since trial counsel had no duty to notify at the time of trial, he did not provide ineffective assistance when he failed to notify Gilbert of his pending suspension.

¶ 21    In support of his position that trial counsel was unqualified to represent him, Gilbert cites *In re Denzel W.*, 237 Ill. 2d 285 (2010), *In re Moore*, 63 Ill. App. 3d 899 (1978), and *People v. Cox*, 12 Ill. 2d 265 (1957). These cases, however, involve representation by law students or non-attorneys. As discussed, Gilbert's counsel was a licensed attorney at the time of Gilbert's trial since the supreme court did not finalize the order of suspension until March 16, 2009. Gilbert has not cited to any cases that hold a licensed attorney facing suspension provides representation that is *per se* ineffective. Instead, see *People v. Perry*, 183 Ill. App. 3d 534 (1989), *People v. Long*, 208 Ill. App. 3d 627 (1990), and *People v. Bernardo*, 171 Ill. App. 3d 652 (1988), in which this court held that the mere fact an attorney faces pending disciplinary proceedings does not render him or her incompetent to defend a person charged with a crime. We find that an attorney who merely faces possible suspension of his license pursuant to a recommendation by the ARDC remains a licensed attorney and is qualified to represent clients.

¶ 22    Gilbert also argues that he never made a knowing waiver of his sixth amendment right to counsel where his trial attorney never informed him of his pending suspension and the fact that he faced another ARDC complaint during Gilbert's trial. As support, he cites *People v. Williams*, 226 Ill. App. 3d 188 (1992). However, in determining whether counsel in *Williams* performed deficiently, the court reiterated the holdings in *Perry*, *Long*, and *Bernardo* that attorneys are permitted to practice law until they are actually suspended or disbarred, and no *per se* rule exists allowing criminal defendants a new trial merely because their attorneys face suspension or disbarment. *Williams*, 226 Ill. App. 3d at 193-94. Instead, claims of ineffective assistance of counsel facing suspension are reviewed under the *Strickland* standard. *Id*. at 194.

¶ 23    Gilbert also contends that his trial counsel provided ineffective assistance because he suffered from dementia at the time of his trial. Gilbert argues that the testimony and findings

of the hearing board show that his counsel suffered from "significant mental health problems" during his representation. As support he refers to psychological evaluations conducted by Dr. David Hartman and Dr. Stafford Henry from September 2006 to January 2007, which were contained in the board's findings. We note again that the hearing board's findings and recommendation are not part of the record on appeal. Furthermore, the doctors conducted their evaluations almost two years before Gilbert's trial. There is no evidence in the record that Gilbert's counsel suffered from dementia at the time of his trial in August 2008. The trial court even conducted a posttrial hearing on Gilbert's motion for a new trial in which his trial counsel testified. The transcript of that proceeding reveals no evidence that counsel suffered from dementia or that those present suspected he was so mentally deficient that his representation of Gilbert was ineffective. Since Gilbert's argument here depends on facts not contained in the record, it is not sustainable on appeal. *Palanti*, 303 Ill. App. 3d at 66.[1]

¶ 24    Gilbert next contends that his trial counsel committed numerous errors at trial rendering his representation of Gilbert deficient. Specifically, Gilbert alleges the following errors: (1) counsel promised the jury a defense of compulsion but did not support this statement with evidence at trial; (2) counsel presented the jury with a legally unsound defense; (3) counsel filed a pretrial affirmative alibi defense when Gilbert was arrested at the scene of the offense; and (4) counsel failed to file a *Montgomery* motion. "Matters of trial strategy are generally immune from claims of ineffective assistance of counsel." *People v. Smith*, 195 Ill. 2d 179, 188 (2000). These decisions include which witnesses to call at trial and what evidence to present to the jury. *People v. Munson*, 206 Ill. 2d 104, 139-40 (2002). Even defense counsel's failure to provide testimony promised during opening statements is not *per se* ineffective assistance. *People v. Manning*, 334 Ill. App. 3d 882, 892 (2002). Defendant must overcome the strong presumption that the challenged action or inaction was the product of sound trial strategy. *People v. Evans*, 186 Ill. 2d 83, 93 (1999).

¶ 25    During opening statements, Gilbert's counsel argued that Gilbert did not want to participate in the robbery but codefendant Cleon Jones showed a gun and forced Gilbert to accompany him to the Auto Zone. However, no other evidence of coercion was presented at trial. Gilbert contends on appeal that had his trial counsel investigated the matter, he would have found witness CeCe Connor who would have testified that he saw Jones threaten Gilbert at gunpoint. However, it appears that counsel's strategy was to argue that Jones somehow forced Gilbert to participate but that none of the codefendants carried guns. Central to counsel's defense (as was the strategy of codefendant Woods' counsel) was to argue that although Gilbert acknowledged participating in a simple robbery, it would not be fair to convict him of felony murder because he and his codefendants did not have guns and the

[1]Gilbert also argues that his trial counsel's ineffective representation was presumptively prejudicial, citing *United States v. Cronic*, 466 U.S. 648, 656 (1984). However, since we found that trial counsel was not an unlicensed attorney at the time of Gilbert's trial, and did not suffer from dementia, we need not address the argument at this time. See *People v. Irvine*, 379 Ill. App. 3d 116, 129-30 (2008) (both prongs of the *Strickland* analysis must be satisfied to show ineffective assistance of counsel).

police reacted with unforseen force which killed codefendant Jones (jury nullification).

¶ 26    The evidence against Gilbert was overwhelming. Counsel cross-examined Pizano and Laluz, whose testimony contradicted that of other State witnesses on whether the officers shouted "police" or "drop the gun" before firing at Jones. He presented Officers McNamara and Scott as defense witnesses, and they testified that they did not see whether Jones had anything in his hand before police shot at him. Pizano and Laluz also stated that they did not recall seeing Jones with a gun. Counsel argued that Jones was not armed and focused on the fact that police fired an excessive 39 rounds at Jones. It would be unfair, he argued, to hold Gilbert responsible for the death of Jones because the shooting resulted from unforeseeable police misconduct which broke the causal connection between the armed robbery and Jones's death.

¶ 27    Given the law of felony murder, this appeal to the jury's sense of justice had no legal basis as a defense. However, courts have determined that counsel's reliance on such arguments is not ineffective assistance *per se*. See *People v. Nieves*, 192 Ill. 2d 487, 499 (2000) (argument that the "sudden and intense passion" element of second degree murder "could be viewed in terms of sympathy and the desire to help a friend" who wanted to die was a "dubious proposition at best"); *People v. Ganus*, 148 Ill. 2d 466, 473-74 (1992) (compulsion defense to murder not a legal defense); *People v. Bloomingburg*, 346 Ill. App. 3d 308, 316 (2004) (counsel presented theory of self-defense, which was unavailable because the defendant was the aggressor and did not face imminent danger of great bodily harm or death). In each case, the court found that counsel's performance was not deficient given the overwhelming evidence against the defendant and the defendant's insistence on pleading not guilty despite the evidence.

¶ 28    Gilbert elected to go to trial on the armed robbery and felony murder charges, and the evidence against him was overwhelming. His counsel was not "confused as to whether simple robbery could be a predicate felony for felony murder," as Gilbert argues on appeal. Rather, trial counsel's strategy, in part, was to argue jury nullification by appealing to the jurors' sympathy and sense of fairness. "[I]t is not necessarily *per se* ineffective assistance for a defense attorney to advance a nonlegal defense, such as a plea for jury nullification *** when the circumstances of the case render other defensive strategies unavailable." *People v. Morris*, 209 Ill. 2d 137, 183 (2004), *overruled on other grounds by People v. Pitman*, 211 Ill. 2d 502 (2004). Although counsel may not argue that jurors should ignore the law in coming to a decision, he may present a defense evoking the "empathy, compassion or understanding and sympathy" of the jurors. *Ganus*, 148 Ill. 2d at 473-74. As the court in *Ganus* stated, "[j]ury nullification is always a possibility" when counsel attempts such arguments. *Id*. at 473. Under the circumstances here, we find that trial counsel employed reasonable trial strategy in arguing jury nullification, rather than compulsion or coercion, in Gilbert's defense.

¶ 29    Gilbert also argues that his counsel was deficient because he filed a pretrial affirmative alibi defense when Gilbert was arrested at the scene of the offense. He contends the defense "makes no sense" because it is based on the fact that the defendant was at a different location at the time the crime occurred. However, as the State points out, there is no evidence that counsel presented the alibi defense to the jury during the trial. As such, Gilbert cannot show

how this action prejudiced him.

¶ 30    Gilbert further contends that his trial counsel's performance was deficient because he "failed to file a *Montgomery* motion before trial, so Gilbert did not know if any of his prior convictions could be used to impeach him." Therefore, Gilbert could not make a knowing waiver of his right to testify, and his failure to testify prejudiced him.

¶ 31    In *People v. Montgomery*, 47 Ill. 2d 510, 516-17 (1971), our supreme court determined that evidence of a witness's prior conviction is admissible to attack his or her credibility when (1) the prior crime was punishable by death or imprisonment in excess of one year, or involved dishonesty or false statements; (2) less than 10 years have passed since the date of conviction of the prior crime or the witness's release from confinement, whichever is later; and (3) the probative value of admitting the prior conviction outweighs the danger of unfair prejudice. Gilbert does not state in his briefs the dates of his prior convictions, or his release from confinement, nor does the record contain this evidence. Without it, we cannot determine whether the trial court would have granted the motion and, therefore, whether trial counsel was deficient in failing to file the motion. See *People v. Gandy*, 227 Ill. App. 3d 112, 127 (1992) (if 10 years or more have elapsed since the prior conviction or release from confinement, "the conviction has lost its relevance to the issue of credibility"). Furthermore, no presumption of prejudice exists where a defendant fails to testify based on a mistaken belief that his prior conviction could be used to impeach him. *People v. Rogers*, 147 Ill. App. 3d 1, 4 (1986). Gilbert has not shown that trial counsel's performance was deficient in failing to file a *Montgomery* motion.

¶ 32    Even if Gilbert's trial counsel performed deficiently, Gilbert must also show that he was prejudiced by the deficient performance in order to prove ineffective assistance of counsel. The evidence against Gilbert was overwhelming. Witnesses observed him enter the store and while the crime was in progress, police surrounded the building. Police apprehended Gilbert and codefendant Woods inside the store. Police had also observed Woods drop a bag containing cash. Even if trial counsel's performance was deficient in the matters put forth by Gilbert, it is unlikely he could show a reasonable probability that the outcome would have been different absent the deficient performance.

¶ 33    Gilbert's final contention is that this court should vacate his convictions for armed robbery since they were the predicate felonies on which his first degree murder conviction was based. The State agrees with Gilbert's contention. Therefore, we vacate his convictions for armed robbery.

¶ 34    For the foregoing reasons, we vacate Gilbert's convictions for armed robbery and affirm his conviction for felony murder.

¶ 35    Affirmed in part and vacated in part.