2026 IL App (1st) 250023
No. 1-25-0023

SIXTH DIVISION
June 5, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | No. 23 CR 11915 |
| v. | ) ) | |
| CHRISTOPHER BERRY, | ) ) | The Honorable Maria Kuriakos-Ciesil, |
| Defendant-Appellee. | ) ) | Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1        *Held*: The trial court properly granted the defense motion to quash arrest and suppress evidence without an evidentiary hearing, and the motion established a *prima facie* case that the warrantless search and seizure was illegal under *People v. Aguilar*, 2013 IL 112116, shifting the burden to the State to prove the *Terry* stop was justified. The denial of the State's request for a continuance on the hearing date marked final was within its discretion.

¶ 2        The State appeals the grant of defendant Christopher Berry's motion to quash his arrest and suppress evidence, claiming reversible error occurred when the trial court granted the motion to quash without a hearing. We affirm. The motion alleged sufficient facts to establish a *prima*

*facie* case that the police officers' actions were not justified; the trial court properly denied the State's request for a continuance to produce a second police officer to testify at a hearing on the motion to quash where no response to the motion to dismiss was filed, one arresting police officer was present in court and available to testify, the State's reason for the absence of the second police witness was unreasonable, and no proffer as to the expected testimony at the suppression hearing was provided. The State did not meet its burden to show the stop and seizure were justified.

¶ 3                                    BACKGROUND

¶ 4        On July 18, 2023, Berry was arrested. In November a grand jury indicted him on two felony charges, unlawful use of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 1992)) and aggravated unlawful use of a weapon 720 ILCS 5/24-1.6(a) (1)/(3) (C) (West 1992) The record reveals that only one arresting officer testified before the grand jury, Chicago police officer Carl Crocker.

¶ 5        The court issued an arrest warrant in December, which was executed on February 28, 2024, and Berry was taken into custody. The case management order, entered the same day, specified a July 29 deadline for all pretrial motions and an October 29 deadline for the final conference.

¶ 6        On August 5, before trial, Berry filed a motion to quash his arrest and suppress evidence. See 725 ILCS 5/114-12 (West 2022). After a continuance by agreement, a final date was set for a hearing on the motion. On that date, the State asked for another continuance because one of the arresting officers (Crocker) was unavailable (the other was present in court). The trial court refused the request and, without holding an evidentiary hearing, granted the motion based solely on the written motion.

¶ 7        The trial court found the State lacked a valid reason for being unprepared. The court also determined the defense was not required to present live witnesses because their motion clearly set forth "their proof of lack of probable cause or reasonable articulable suspicion." Further, the court

noted the State had an opportunity to respond to the motion when it was filed, but did not. The trial court granted the motion, finding "the defendant has, by a preponderance of the evidence, met the burden that they need to meet in presenting this written motion to quash arrest and suppress evidence."

¶ 8        The motion to quash asserted the officers did not have a reasonable articulable suspicion to stop Berry, nor did they have probable cause to arrest him. The motion to quash stated that on the morning of July 18, 2023, in the area of 1132 West 57th Street in Chicago, Chicago police officers Carl Crocker and Berry (not related to defendant) saw Christopher Berry on the street carrying a paper bag they believed had a bulge in it. From their car, the officers ordered Berry to stop and interrogated him about the bag's contents. When the officers got out of the car, Berry "moved away" from them. The officers then arrested him, searched the bag, and found a gun. The motion asserted that observing a bulge was not enough to justify a *Terry* stop, and flight did not give the officers probable cause to arrest or even reasonable suspicion to stop Berry.

¶ 9        The court scheduled a hearing for September 25, 2024, but continued the matter to October 31, marking it final. On October 31, the defense was ready, but the State answered not. The assistant state's attorney sated that she had notified Chicago police officers Crocker and Berry, but only Officer Berry was present. She stated Crocker was needed in order to proceed with the hearing. She further stated that her partner tried to reach Crocker by cell phone and by speaking with his court sergeant, but could not reach him.

¶ 10       The State did not file a written motion for continuance, despite the Case Management order entered February 29, 2024, requiring a written motion supported by affidavit. The Case Management order also set November 29 as the final disposition date for the case.

¶ 11 The trial court considered the State's request unreasonable and refused to continue the matter because the hearing date had been marked final; the State did not have one of the witnesses and did not have an acceptable reason for his absence. The court explained examples of a reasonable request would include when an officer is on furlough, has a family emergency, or is called on duty, none of which applied in the situation.

¶ 12 The court set the matter for a bench trial on December 3. The State filed a motion for reconsideration, which the court denied. In so ruling, the court stated: "The Court has since reviewed the defense motion again and the Court stands by its ruling that the defense, through their written motion, provided sufficient basis for this Court to rule that the defense has properly presented their motion, and the Court has granted their motion. And so based on all of the arguments I've heard today and the review of the motions filed by both parties and the cases that were handed, I find that I have *** properly ruled on the defendant's motion and so -- for the State's motion to reconsider. And I find that the defendant has, by a preponderance of the evidence, met the burden that they need to meet in presenting this written motion to quash arrest and suppress evidence."

¶ 13 The State then filed an amended notice of appeal of the October 31 order and the December 3 order denying the motion for reconsideration, as well as a certificate of substantial impairment.

¶ 14 ANALYSIS

¶ 15 Before turning to the substantive arguments raised in this appeal, we note that the record on appeal includes a transcript of the report of proceedings on October 31, but nothing before that date. The trial court first scheduled the hearing on the August 5 motion for September 25, but neither side was ready. Instead of holding a hearing, the trial court continued the matter to October 31, marking it final. The record contains no discussion other than what occurred on October 31.

The appellant is required to provide a complete record on appeal, and any doubts arising from an incomplete record will be resolved against the appellant. Ill. S. Ct. Rule 608 (eff. July 1, 2017); See *People v. Gilbert,* 2013 IL App (1st) 103055, ¶ 17 (appellant has the duty to present complete record of proceedings below to support claim of error).

¶ 16                                      Denial of Continuance

¶ 17        The right to a continuance is not absolute, and the circumstances regarding the continuance motion must be evaluated on a case-by-case basis, including the reasons presented to the trial court at the time the request is denied. *People v. Rios*, 2022 IL App (1st) 171509, ¶ 86. The choice to grant or deny a continuance is within the discretion of the trial court. *People v. Ward*, 154 Ill. 2d 272, 307 (1992). This decision should not be reversed unless it was fanciful, arbitrary, or unreasonable. *People v. Staple*, 402 Ill. App.3d 1098, 1102-03 (2010). Factors which are to be considered upon review of the denial of a motion to continue include (i) whether the movant demonstrated diligence in attempting to secure the witnesses, (ii) whether the proposed testimony was material and likely to have affected the verdict, and (iii) whether the movant was prejudiced when the motion was denied. *Ward*, 154 Ill.2d at 307.

¶ 18        The statute governing pretrial motions requires any request for a continuance that is made more than 30 days after the arraignment to be written and supported by an affidavit. See 725 ILCS 5/114-4(a) (West 2022). In a situation where there was no evidence of a written motion for continuance or supporting affidavit contained in the record, this court upheld the denial of the request. *Rios*, 2022 IL App (1st) 171509, ¶ 87.

¶ 19        In this case, the motion was filed on August 5 with a hearing date set for September 25. On that date, neither side answered ready, whereupon the trial court set a final hearing date for October 31. Again, only the October 31 report of proceedings is before this court. The State did not file a response to the motion, did not seek a continuance in writing as required by statute, answered not

ready, and requested another continuance. Even though one police officer was present, the second officer was not, and the State offered no explanation as to why beyond that no one could reach him.

¶ 20        The court's decision to deny a continuance was a reasonable decision.

¶ 21               Grant of Motion to Quash Arrest and Suppress Evidence

¶ 22        The State requests reversal of the order granting the motion to quash and a remand to the trial court for a hearing on the motion.

¶ 23        The State first argues the language in the statute *requires* the trial court to hold a hearing: "The judge shall receive evidence on any issue of fact necessary to determine the motion." 725 ILCS 5/114-12(b) (West 2022). The State frames the issue as "[w]hether the circuit court erred as a matter of law in granting defendant's motion to quash arrest and suppress evidence without holding an evidentiary hearing and based solely on the allegations contained in defendant's written motion." The State points to the language in the statute

¶ 24        But this position is not supported by case law. We find guidance in *People v. Lakes*, an unreported case that directly addresses the same argument put forth by a defendant who asked this court to hold that a hearing is mandated by the statute. *People v. Lakes*, 2025 IL App (1st) 241549-U, ¶ 52. The *Lakes* court found "Illinois authority does not go so far as saying that filing a motion to suppress automatically triggers an evidentiary hearing." Instead, the court held that a *defendant* has a *right* to an evidentiary hearing on a motion to suppress, an important distinction. *Lakes* cited published opinions for support: *People v. Robinson*, 46 Ill. 2d 229, 231-32 (1970) ("there is no question that a defendant has a right to a fair and impartial hearing to determine whether" an eyewitness identification was the product of suggestive police procedures); *People v. Stiles*, 95 Ill. App. 3d 959, 964-65 (1981) ("It is fundamental that a defendant is entitled to a full and fair hearing

on [a] motion to suppress."); *People v. Fultz*, 32 Ill. App. 3d 317, 331-32 (1975) (when defendant timely files a motion to suppress his confession as involuntary, "he is then constitutionally entitled to a hearing on the issue.").

¶ 25                                                    *Prima Facia* Finding

¶ 26          The State next asserts that after denying the State's request for a continuance to bring in the absent officer, the trial court summarily granted the motion to quash the arrest without making a finding that the defense had made a *prima facie* case for suppression and without giving the State an opportunity to rebut the motion with the testimony of the one officer who was present. But the trial court's words contradict this assertion when it found the defense did not have to proceed by live witnesses because the motion clearly laid out what they intended to show as "their proof of lack of probable cause or reasonable articulable suspicion." At the same time, the court found the State did not give a valid reason for answering not ready.

¶ 27          A defendant filing a motion to suppress evidence has the initial burden of making a *prima facie* case that the evidence was obtained by an illegal search or seizure. 725 ILCS 5/114-12(b) (West 2022); *People v. Brooks*, 2017 IL 121413, ¶ 22; *People v. Cregan*, 2014 IL 113600, ¶ 23; *People v. Lampitok*, 207 Ill.2d 231, 239 (2003). The movant has the burden to establish the factual and legal bases for the motion to suppress; but once that is established, the burden shifts to the State to counter the defendant's *prima facie* case and show that the search was justified. *People v. Kowalski*, 2011 IL App (2d) 100237, ¶ 9. See *People v. Scott*, 249 Ill. App. 3d 597, 600 (1993) (movant's burden to prove that the seizure was unlawful or impermissible). A defendant meets this burden by showing that a warrantless search was conducted. *Kowalski*, 2011 IL App (2d) 100237, ¶ 9.

¶ 28    If the defendant makes a *prima facie* showing that the evidence was obtained from an illegal search, the burden then shifts to the State to present evidence to counter it. *People v. Gipson*, 203 Ill.2d 298, 306-07 (2003).

¶ 29    Whether or not a *prima facie* case has been made is a factual determination to be made at the discretion of the trial court judge. *People v. Relwani*, 2019 IL 123385, ¶ 18. The trial court's decision on this matter should not be reversed unless it is shown to be clearly against the manifest weight of the evidence. *Id.* The trial court's ultimate legal ruling on whether the evidence should be suppressed is reviewed *de novo*. *People v. Bonilla*, 2018 IL 122484, ¶ 8.

¶ 30    The motion stated facts that raised the issue of illegality of the stop and search and supported a finding that the *Terry* stop was unjustified. See *Terry v. Ohio*, 392 U.S. 1 (1968) (An officer may temporarily detain a person with less than probable cause, for the officer's safety, if the *Terry* officer has reasonable, articulable suspicion of the defendant's criminal activity). The trial court found Berry established a *prima facie* case for suppressing the evidence as the "fruit" of the illegal search.

¶ 31    We agree with Berry that the written motion was "sufficiently detailed for the trial court to find he made a *prima facie* case," and that this is "particularly true where the State did not file a response to the motion to suppress, never contested the accuracy of the content of the motion to suppress, and did not provide a proffer of what Officer Crocker would testify to at the suppression hearing." The motion contended the stop was illegal; Berry was standing on the street with other individuals, carrying brown paper bag with a "bulge" while doing nothing illegal. This was sufficient detail to support a finding that Berry made a *prima facie* showing. The burden then shifted to the State to rebut. But the State had not filed a response to the motion, had never contested the accuracy of the facts alleged in the motion, and had failed to make an offer of proof

as to what the absent officer would testify to at a hearing on the motion. The State simply answered not ready on the final hearing date, without providing a reasonable explanation to the court.

¶ 32        The State suggests that Berry could have called the officer who was present to testify. But "[w]ith the burden of production on the State (as here), 'it is not a defendant's responsibility to assist the prosecution by signaling gaps in the State's evidence.' " *People v. Davis*, 2019 IL App (1st) 181492 ¶ 31 (citing *People v. Moton*, 277 Ill. App. 3d 1010, 1013 (1996)).

¶ 33                                            *Terry* Stop

¶ 34        Generally, the United States and the Illinois constitutions protect the right of each person to be free from "unreasonable searches and seizures." U.S. Const. amends. IV, XIV; Ill. Const. (1970) art. I, § 6. Without a warrant, a police officer may stop someone for brief questioning if the officer reasonably believes that person has committed or is about to commit a crime. *Terry*, 392 U.S. at 22. In *Terry*, the Supreme Court considered "the nature and quality of the intrusion on individual rights which must be accepted if police officers are to be conceded the right to search for weapons in situations where probable cause to arrest for crime is lacking." *Id.* at 24. This is such a case.

¶ 35        Without probable cause for arrest, the constitutional right to be free from the "intrusion" of a search for weapons can be overcome but only if the officer has "a reasonable, articulable suspicion of criminal activity." *Id.* See *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006). Additionally, Illinois has enacted a statute codifying the *Terry* standard: "Temporary questioning without arrest." 725 ILCS 5/107-14 (West 2022). Courts apply an objective standard and consider whether the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action was appropriate. *People v. Timmsen*, 2016 IL 118181, ¶ 9 (quoting *Terry*, 392 U.S. at 21-22).

¶ 36    The fact that Berry was carrying a firearm is not, by itself, sufficient to provide officers with probable cause. In *People v. Aguilar*, the Illinois Supreme Court held that it was unconstitutional to prohibit the possession of a firearm for self-defense, and since *Aguilar*, mere possession of a firearm is no longer illegal. *People v. Aguilar*, 2013 IL 112116, ¶ 21. Thus, "[s]uspicion and presumption of illegality are no longer the default for officer observation of gun possession." *People v. Wilson*, 2020 IL App (1st) 170443, ¶ 33. See *People v. Thomas*, 2019 IL App (1st) 170474, ¶ 40. ("[P]olice cannot simply assume a person who possesses a firearm outside the home is involved in criminal activity.").

¶ 37    Therefore, "[p]ossession of a firearm, by itself, is not a crime. Nor is knowing that one possesses a firearm. Indeed, any statute that criminalized the knowing possession of a firearm— full stop, without more—would clearly violate the second amendment," *People v. Lee,* 2019 IL App (1st) 162563, ¶ 85 (Justice Ellis, specially concurring) (citing *McDonald v. City of Chicago*, 561 U.S. 742(2010); *District of Columbia v. Heller*, 554 U.S. 570 (2008) (reversed on other grounds). See *Thomas*, 2019 IL App (1st) 170474, ¶ 40 ("We wish to emphasize that under the current legal landscape, police cannot simply assume a person who possesses a firearm outside the home is involved in criminal activity.").

¶ 38    Finally, the facts in *People v. Bloxton* are nearly identical, where this Court reversed convictions for unlawful possession of a weapon by a felon and possession of a defaced firearm. In *Bloxton*, officers patrolling a residential neighborhood saw several people drinking out of plastic cups on a public way and stopped to investigate. *People v. Bloxton*, 2020 IL App (1st) 181216, ¶ 6. An officer made eye contact with the defendant, who then began walking away. *Id.* The officer saw a large "bulge" in the defendant's pocket that the officer thought might be a firearm. *Id*. The defendant ignored the officer's command to stop and continued walking away. *Id*. The officer

followed, saw the handle of a gun in the defendant's pocket, and police then detained him. *Id*. This court held "the officers had no reason to believe that [the defendant] was committing or had committed a crime," explaining that the act of walking away from the officers did not amount to reasonable suspicion, and the sight of the gun did not constitute probable cause under *Aguilar*. *Id*. ¶¶ 22, 24-25; see also *People v. Surles*, 2011 IL App (1st) 100068, ¶ 40 (police officer's observation of bulge in defendant's waistband not an independent basis for a pat-down search).

¶ 39                                                  CONCLUSION

¶ 40        Under these circumstances, the motion to quash was properly granted.

¶ 41        Affirmed.